■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SIXTO ORTIZ, Appellant.—Judgment of the Supreme Court, Bronx County (Ira Globerman, J., at suppression hearing, plea and sentence), rendered March 19, 1991, convicting defendant, upon his plea of guilty, of criminal possession of a weapon in the third degree (possession of a loaded firearm outside the home or place of business), and sentencing him, as a persistent violent felony offender, to an indeterminate term of imprisonment of from 7 years to life, unanimously affirmed.

At a combined *Mapp-Huntley* hearing, conducted on November 2, 1990, testimony was received from both defendant and the arresting officer regarding the sequence of events which led up to defendant's arrest at about 4 A.M. Approaching the Grand Concourse on Mount Eden Avenue while on routine patrol in an unmarked police car, the officer heard what he

believed to be three gunshots coming from somewhere beyond the intersection. Proceeding westbound one block further on Mount Eden Avenue, the officer and his partner arrived at Walton Avenue, a well-lit intersection, where they observed defendant, the only person at that location, standing with his back towards them. At their approach, defendant started walking along the street looking back at them several times. He then entered a "smoke shop", whereupon the officers double-parked directly in front of the store. Defendant was observed to remain on the premises only 10 to 15 seconds, without making a purchase and while continuing to look in their direction. When he emerged, the officers approached on foot and, from a distance of about three feet, asked defendant if he had heard gunshots. Defendant responded in the affirmative and pointed in the direction of 174th Street, then turned away bringing his right hand toward his inner left breast pocket as he did so. Fearing that defendant might be reaching for a weapon, the officer grabbed defendant's hand and, in so doing, felt a hard, metallic object which he believed to be a gun. The officer then reached into defendant's pocket and removed a loaded, .25 caliber semi-automatic pistol. After a struggle, defendant was placed under arrest.

Defendant's testimony at the suppression hearing was that he went into the store to buy cigarettes and spoke briefly with a friend while inside. Defendant's allegation is that, as he left, he was grabbed by the wrist, pulled outside and restrained from behind by a hold around the neck while the gun was removed from his inner jacket pocket.

In an oral decision rendered December 18, 1990, Supreme Court denied defendant's motion to suppress the evidence. Defendant entered his plea of guilty on January 3, 1991. A comprehensive written opinion, subsequently issued on February 8, 1991, included findings of fact in which the court fully credited the testimony given by the arresting officer and rejected defendant's testimony, especially his contention that he wore a sweater and leather jacket under a denim jacket and wore sweat pants underneath his jeans, making the gun undetectable to sight or touch. A record of weather observations, introduced into evidence, indicates a temperature of 55 degrees under clear skies at 4 A.M. on the morning in question.

According appropriate weight to the hearing court's credibility determinations, in light of its advantage in having seen and heard the witnesses (People v Prochilo, 41 NY2d 759, 761), the arresting officer acted reasonably under the totality of the

circumstances *(see, People v Benjamin,* 51 NY2d 267, 271). It is beyond cavil that the police possessed an objective, credible reason to request information from defendant. His subsequent action in turning away and reaching for an inside pocket soon after shots had been heard in the vicinity is hardly innocuous behavior susceptible to an innocent interpretation, as defendant attempts to characterize it. Together with his evasive behavior following the approach of the patrol car and his apparent interest in the activities of its occupants, defendant's gesture must be viewed as threatening and supportive of the officer's action in precaution for his own safety *(People v Benjamin, supra).*

As the Court of Appeals observed in *People v De Bour* (40 NY2d 210, 225), "police-citizen encounters are dynamic situations during which the degree of belief possessed at the point of inception may blossom by virtue of responses or other matters which authorize and indeed require additional action as the scenario unfolds." The matter at bar represents such a rapidly-unfolding, dynamic situation which, from the evidence adduced, Supreme Court found to justify the officer's "virtually reflexive action in grabbing the defendant's hand during this fast-moving confrontation". The testimony presented by the People is not "inherently incredible or improbable" and the determination made by Supreme Court, expressed in a thoughtful and detailed opinion, will not be disturbed *(People v Samuels,* 68 AD2d 663, 666, *affd* 50 NY2d 1035, *cert denied* 449 US 984). Concur—Milonas, J. P., Rosenberger, Ellerin and Rubin, JJ.